Olympia MAGGIPINTO and her husband
Cosmo Maggipinto

v.

Dr. Leonard REICHMAN.

Civ. A. No. 77–531.

United States District Court,
E. D. Pennsylvania.

Dec. 20, 1979.

Avram G. Adler, Philadelphia, Pa., for plaintiff.

J. Grant McCabe, III, Philadelphia, Pa., for defendant.

## MEMORANDUM

BECHTLE, District Judge.

The United States Court of Appeals for the Third Circuit remanded this case so that this Court could articulate why it granted defendant's motion for a directed verdict as to plaintiff's dental malpractice claim.

This action against an oral surgeon consisted of a dental malpractice claim and a claim that the defendant performed surgery on the plaintiff without gaining her prior informed consent. The informed consent claim was submitted to the jury, which returned a verdict in favor of the surgeon. However, the malpractice claim was not submitted to the jury because the Court ruled that the plaintiff had not produced any evidence to support her theory of liability.

The malpractice claim was premised upon a claim of damage to the plaintiff's lingual nerve which caused her to permanently lose sensation throughout a portion of her tongue. The defendant acknowledged that the plaintiff's lingual nerve had been damaged during the extraction of her third lower-right molar but denied that he had been negligent. The plaintiff's sole theory, both at trial and on appeal, was that the defendant had negligently pierced the plaintiff's lingual plate (a bony plate proximate to the tongue). However, there was no evidence presented at trial tending to prove that the lingual plate had, in fact, been pierced. Accordingly, the Court granted the motion for a directed verdict on the ground that no evidence was produced supporting this crucial element of plaintiff's theory of causation.

Plaintiff argued on appeal, for the first time, that excerpts from two treatises on oral surgery, which had been used by her counsel for impeachment purposes at trial, had in some way become transmuted into substantive evidence admitted into the record under Fed.R.Evid. 803(18). Plaintiff argued on appeal that these treatises fit within the hearsay exception of Fed.R.Evid. 803(18), which provides as follows:

> The following are not excluded by the hearsay rule . . .
>
> \*     \*     \*     \*     \*     \*
>
> (18) *Learned treatises.* To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. *If admitted, the statements may be read into evidence but may not be received as exhibits.*

(Emphasis added.)

The two treatises relied upon by the plaintiff are: (1) *Oral Surgery* (3d ed.), by Kurt H. Thoma ("Thoma"); and, (2) *Oral and Maxillofacial Surgery* (5th ed.), by Archer ("Archer"). Defendant, called by plaintiff as on cross-examination, authenticated these volumes over objection and thereafter certain passages from Thoma and Archer were simply read *to the defendant* in the form of questions in the course of cross-examination while he was on the witness stand as *plaintiff's* witness. The Court of Appeals was unsure whether the material read was used for impeachment purposes only or whether the plaintiff's attorney was, by this exercise, offering the treatises as substantive evidence under Rule 803(18).

After examining the record and the notes of testimony, it is perfectly plain now, as it was in the courtroom, that the treatises were used solely for impeachment purposes and not as substantive evidence. Of course, the Court does not and did not decide whether the treatises *could* have been admitted under Rule 803(18) because the Court was not asked to decide that issue. Moreover, the pretrial procedures that were utilized by the Court, as well as fundamental hornbook trial practice, require and recommend, respectively, procedures that are designed to permit the Court to make in-

formed rulings on evidentiary matters after full review in an adversary setting.[1] Accordingly, the evidence used for impeachment, and never identified as required in pretrial procedures nor proffered during the trial as substantive evidence, cannot be transformed into substantive evidence through some process of jurisprudential absorption.

It is important to fully understand in some detail from the vantage point of the trial judge the technique employed by plaintiff's counsel in the use of the treatises at the trial, as contrasted with the use that was suggested for the first time in the Court of Appeals. Plaintiff called the defendant as a hostile witness "as of cross examination." [N.T. 1–2.] After exploring certain general matters, plaintiff's counsel asked:

Do you agree with this statement: "Injury to the lingual nerve is not usually caused by the removal of a third molar, although it may occur if a tooth that erupts at the lingual surface of the jaw below the mylohyoid ridge must be removed. *In ordinary cases injury of the lingual nerve would occur only by gross negligence, the slipping of a hand chisel or a lever used with uncontrolled application of excessive force.*"

N.T. 1–19 (emphasis added). Defense counsel immediately objected to the manner in which his client was being impeached. *Id.* The Court overruled the objection on the ground that the question was "fair" questioning of a party as on cross-examination. *Id.* The defendant then testified:

I disagree with that statement wholeheartedly. I know it is written in Thoma's text and it is totally erroneous.

N.T. 1–19. Plaintiff did not otherwise identify the quoted passage, did not show it to the Court or opposing counsel and did not follow even the most basic formality of making an offer of evidence. Moreover, even though the witness had previously acknowledged that Thoma was recognized in the profession as an authority, no ruling

was sought from the Court that Thoma was "reliable authority" under Rule 803(18).

Shortly thereafter, plaintiff's counsel referred the defendant to Archer, this time identifying the page and edition:

Doctor, I show you a book which you have considered authoritative, "Archer on Oral and Maxillofacial Surgery," and it says, "Complications," and I refer you to "Complications during or after removal of impacted malopposed or rudimentary teeth," and can you tell me in the nineteen things that it mentions, does it mention a permanent injury to the lingual nerve?

N.T. 1–53.

The defendant responded:

It does not. However, No. 18 . . . "forcing an apex through the lingual plate of the mandibular sub-lingual space," which is pertinent. They mention something else which is not pertinent.

It appears to me that if this were to happen, you would have an injury to the lingual nerve, but it doesn't mention it specifically.

N.T. 1–54, 55. Once more, plaintiff's counsel did not state that he was offering substantive evidence under Rule 803(18), did not seek a ruling that Archer was reliably authoritative and did not make any formal offer.

Up to this point, neither defendant's counsel nor the Court could be expected to consider the information as substantive evidence because, in addition to these shortcomings, the material had not been identified in the pretrial process as the Court required for each exhibit to be offered by each party ". . . in furtherance of their respective contention."

During oral argument at side-bar on the defendant's motion for a directed verdict, plaintiff's counsel passed up his last opportunity, in the trial court, to bring to the Court's attention his reliance on the admissibility of the treatises under Rule 803(18). He argued:

---

1. *See* paragraphs 5 to 8 of the Court's pretrial Memorandum Order (Document 11) and the parties' pretrial memoranda filed in response thereto (Documents 12 and 13).

[S]ome legal writers, some medical writers—I am not saying that this is sufficient itself—say that it is gross negligence if in taking out a wisdom tooth, that is, a mandibular wisdom tooth, the lingual nerve is injured, and I developed through this doctor that the lingual nerve is medial of the lingual plate.

N.T. 2–39. In light of the absence of any evidence tending to show that the plaintiff's lingual plate had been pierced, the Court granted the defendant's motion.

■ The trial court's view that the treatises could not be used for their substantive value, in the manner in which they were used, is supported by the facts of the case as well as by elementary principles of good trial practice.

First, the treatises were used during the course of direct examination of an adverse party called as on cross-examination but, more importantly, in an examination that was declared by the questioner at the virtual outset to be "cross-examination." [2] Under such circumstances and in light of plaintiff's pretrial filings, opposing counsel and the Court clearly understood that the treatises were being used as impeachment tools. Nonetheless, plaintiff's counsel stood by, permitting the Court and opposing counsel to continue in what he must have known to be a material misapprehension—material because, as impeachment material, the treatises could not have been considered for the truth of the matter asserted, whereas under Rule 803(18) they could have been.

■ Second, the structure of the Federal Rules of Evidence clearly placed the burden of showing that the treatises fit within Rule 803(18) squarely on the plaintiff. Under the Rules, all relevant evidence is *prima facie* admissible. Fed.R.Evid. 401. However, a party may successfully oppose an offer of otherwise relevant evidence by showing that it is hearsay. Fed.R.Evid. 802. Thereafter, relevant hearsay evidence may nevertheless be admitted for its truth if the proponent can show that the evidence fits within one of the many exceptions to the hearsay rule, such as exception 18 of Rule 803. Fed.R.Evid. 803, 804. Here, the proponent of the treatises stood by, not citing the grounds now proposed for admissibility, while the Court in effect ruled that "use" of the material (as contrasted to "admissibility") was proper for impeachment purposes.

■ Third, the language of Rule 803(18) tells us that something more is required of the proponent of evidence than merely asking the expert witness whether (s)he [*] agrees with a statement in a treatise. By its terms, the Rule requires the proponent to establish to the satisfaction of the Court that the treatise is "reliable authority," and *that* must be ruled upon favorably by the Court before the statement may be read into evidence in the presence of the jury. 4 J. Weinstein and M. Berger, *Weinstein's Evidence*, ¶ 803(18)[2], at 803–221 (1978). This requirement is essential if the Court is to have control over the admissibility and presentation of evidence. Similarly, such formalities are absolutely essential in order to permit opposing counsel to make a "timely" and "specific" objection. Fed.R.Evid. 103(a)(1). The doctrine of fairness requires as much.

■ The last sentence of Rule 803(18) states: "If admitted, the statements may be read into evidence but may not be received as exhibits." The phrase "If admitted" makes it clear that learned treatise material should be offered in the same fashion as any other substantive evidence, for there is no reason for a difference. The prohibition on receiving such treatises themselves as exhibits does suggest the need for a difference from the way in which other exhibits are received, in order to keep the often-voluminous treatises themselves out of the jury room, where they would receive undue attention and em-

---

**2.** "Wait, your Honor. This is cross-examination." [N.T. 1–10.]

[*] In any instance where either "he" or "she" could be used without changing the meaning or sense of the thought being expressed, the symbol "(s)he" will be used.

phasis. *Weinstein's Evidence, supra,* ¶ 803(18)[01], at 803–217.

Fourth, pretrial procedure is designed, in part, to provide the Court and opposing counsel with notice of the evidence and theories upon which each party intends to rely at the trial. And, especially in the area of experts' opinions, a party may discover the opinions of an opponent's experts, as well as the facts relied upon by these experts. Fed.R.Civ.P. 26(b)(4). This Court utilized its standard pretrial Memorandum Order in this case, directing counsel to exchange, prior to trial, information concerning contemplated trial exhibits and witnesses, including expert witnesses. Even though this order was filed over a year before trial, and the pretrial memoranda of counsel were filed 10 months before trial, nowhere is there mention of Thoma and/or Archer or their treatises.

■ Finally, and perhaps more importantly, the simple yet essential formalities of trial practice are designed to permit the orderly presentation of relevant admissible evidence, under the supervision and control of an informed trial judge. In discharging the duty to provide a fair forum for the adjudication of disputes, the trial judge must construe the rules of evidence "to secure fairness in administration . . .." Fed.R.Evid. 102. In furtherance of this goal, preliminary questions concerning admissibility are to be determined by the Court. Fed.R.Evid. 104(a), (b). Thus, it is only through the requirement of a minimal yet distinct, specific offer of articulated and identifiable evidence that the Court can examine the relevance or the completeness of evidence, as well as all other elements bearing on the admissibility of the offer.

A fortuitous example of the need for such discipline at the trial level is presented by the case at bar. The briefs filed in the Court of Appeals reveal that there was a serious dispute there concerning the edition of Thoma relied upon by the plaintiff. It appears that, as of the time of the argument in the Court of Appeals, the then-most-recent edition of Thoma did not in-

clude the passage relied upon by the plaintiff at the trial. While the Court is not now asked to address the serious implications of this question, it is easily seen that, if the proper steps had been taken by the plaintiff in the pretrial and trial stages of the case, the importance or lack of importance of this phenomenon would have been laid to rest there and not put to the Court of Appeals to make a ruling on an evidentiary question.

In addition to permitting the trial court to properly discharge its duty, minimal trial practice requirements must be expected to accompany offers of evidence of this nature if opposing counsel is to fulfill his or her obligations. As we know, under the Federal Rules of Evidence, error may not be predicated upon a ruling which admits evidence unless "a timely objection . . . appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Fed. R.Evid. 103(a)(1). Here, defense counsel did not object to the receipt into evidence of Thoma (3d ed.) as a learned treatise because there was no way he could have known that the plaintiff was offering it as substantive evidence under Rule 803(18).

Digressing to the elementary, the basic steps to be followed in offering documentary material into evidence at a trial are clearly outlined in a typical, yet authoritative, basic trial practice textbook used in many of our region's law schools:

The introduction of a document involves these separate steps: (1) having it marked by the reporter for identification; (2) authenticating the document by the testimony of the witness (unless it has a certificate or other authenticating characteristics); (3) offering the document in evidence; (4) permitting adverse counsel to examine the document; (5) adverse counsel's objecting, if he so chooses; (6) submitting the document to the court for examination if the court so desires; (7) the court's ruling on its admission; and (8) if it is admitted in evidence, present-

552

ing it to the jury by reading, passing it among them, or other means.

R. Keeton, *Trial Tactics and Methods*, 63 (2d ed. 1973) (footnote omitted). The importance to the cause that each and every step be taken is demonstrated by the following observation:

> Frequently inexperienced counsel will have a document identified and authenticated with scrupulous care and then fail to take the all-important step of moving for the admission of the document into evidence. Such a lapse can often have serious consequence, such as undermining the evidentiary support of a favorable verdict, resulting in its reversal.

American Law Institute—American Bar Association Committee on Continuing Professional Education, *Civil Trial Manual*, student edition, 300 (1976) (footnote omitted). See also R. Hunter, *Federal Trial Handbook*, § 58.2, at 489 (1974); J. McElhaney, *Effective Litigation* 14 (1974).

Because these essential, though elementary, formalities were not followed, the trial court did not admit the treatises under Rule 803(18) but only allowed their use for impeachment purposes. Accordingly, in ruling on defendant's motion under Fed.R. Civ.P. 50 to dismiss plaintiff's claim based on negligence, the Court did not include the treatise material as part of the substantive evidence the jury would have had available to it in deciding that claim. Inasmuch as the remaining evidence was clearly insufficient to send the negligence claim to the jury, the motion to dismiss was granted.